· FORD *v.* STATE.

Opinion delivered December 5, 1910.

1. HOMICIDE—SELF-DEFENSE—PROVOCATION.—An instruction in a prosecution for murder to the effect that the defendant was justified in killing if he had been informed of threats against his life made by decedent and had reason to believe that decedent was in the act of executing such threats was properly refused, as it failed to allege that defendant must have been without fault in inviting or provoking the assault. (Page 587.)

2. EVIDENCE—RES GESTAE.—Testimony of a witness in a homicide case that at the time of the shooting and in its vicinity he heard some one exclaim "Oh, don't!" was admissible as part of the *res gestae*, without proof that it was made by decedent. (Page 588.)

3. SAME—TESTIMONY OF NONEXPERT.—It was not error in a murder case to permit an unskilled witness to prove that a line drawn from where the bullets struck to where the decedent was shot, if extended, would pass over a certain pile of cross ties. (Page 588.)

4. APPEAL AND ERROR—HARMLESS ERROR.—It was not prejudicial error in a murder case to permit nonexpert witnesses to testify as to the range of bullets in decedent's body where an expert witness testified to the same effect, and there was no dispute as to such fact. (Page 588.)

5. HOMICIDE—EVIDENCE.—Testimony in a murder case that a person who resembled defendant was seen near decedent's house at night a week before the killing, and that he appeared to have a stick in his hand was not prejudicial where the court directed the jury to disregard it unless the evidence showed that it was the defendant. (Page 588.)

6. SAME—EVIDENCE.—It was not error, in a prosecution for murder, to admit testimony showing the disturbed condition of the ground near the scene of the killing, as though some person or animal had

stood or walked there, though the witness could not say when the tracks were made. (Page 589.)

7. ' SAME—EVIDENCE—MOTIVE OF KILLING.—It was not error, in a murder case, to prove that at the time of the killing an indictment was pending against defendant for an assault with intent to kill decedent, as such fact tended to show a motive for the killing. (Page 589.)

8. APPEAL AND ERROR—HARMLESS ERROR.—The admission of evidence which tended to establish guilt of a higher degree than that of which defendant was convicted was harmless. (Page 589.)

Appeal from Lafayette Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*Searcy & Parks* and *Powell & Taylor,* for appellant.

1. The third instruction requested by defendant was correct and should have been given. 51 S. W. 238; 81 S. W. 33.

2. The testimony of the witness Tuland that at the time of the shooting he heard some one exclaim "Oh, don't!" without identifying who it was, either by sight or sound of voice, was improperly admitted. 43 Ark. 289; 71 Ark. 112; 56 Ark. 326.

3. The location of the house, the pile of crossties and the body of deceased were capable of being described to the jury in the ordinary way. The testimony of witnesses with reference to the range of the bullets, the direction from which they came, etc., was therefore inadmissible. 82 Ark. 214; 85 Ark. 64; 63 Ark. 467.

, 4. The testimony of Dean Gaines should have been excluded. 71 Ark. 112; *Id.* 150.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The third instruction requested by the defendant was properly refused because in the form asked it ignores that requirement of the law of self-defense that one who pleads justification for his act must be without blame for the necessity which requires such act. 73 Ark. 568; *Id.* 399; 69 Ark. 558; Wharton on Homicide (3 ed.) Bowlby, 511 and cases cited in notes 1 and 2; 35 Tex. Crim. App. 2; 23 *Id.* 164.

2. The exclamation, "Oh, don't!", testified to by the witness Tuland, was admissible as a part of the *res gestae.* Wigmore on Evidence, § § 1755, 1790; 65 Ark. 590; 85 Ark. 479; Wharton on Evidence, 258-267; 21 Ark. Law Rep. 423.

3. The testimony with reference to the range of the bullets, the direction from which they came, etc., was admissible.

KIRBY, J. The appellant, Burke Ford, was indicted for murder in the first degree for killing C. G. Wooley, and, after plea of not guilty, on trial convicted of murder in the second degree, and sentenced to twenty-one years in the penitentiary.

The evidence shows that C. G. Wooley was killed, being shot twice with a double-barreled shotgun loaded with buckshot early on the night of December 31, 1909, while on his way home from the depot house near some piles of cross ties on the side of the street near its crossing of the railroad track in the town of Lewisville. A hotel proprietor by the name of Mat E. Mulkey was the first to reach the scene of the tragedy. The man who was shot, according to this witness, Mulkey, lived only about two minutes after he reached him, and never made any statement whatever as to the cause of the difficulty which ended so suddenly in his death. Another witness for the State testified that he heard some one crying out, "Oh, don't!" and that he saw the flash of a gun, and that the cry seemed to proceed from the immediate vicinity of the shots, although the witness did not identify the voice as being either the voice of the man who was killed or of the accused. The mortally wounded man, whose name was Wooley, was lying doubled up on the ground, with his coat buttoned up, and the witness, Mulkey, took from his hip pocket a revolver, which was almost securely concealed in the pocket, and could only just be seen by the witness. In a short time quite a crowd had gathered about the body. There were found upon the ground, close to this pile of cross ties, a number of gun wads some feet distant from the body. A straight line drawn from the gun wads across the body would hit near the corner of a house about 150 feet away, and it was found that bullets had struck near the corner of this house. The same straight line drawn from the point where the bullets were found across the deceased's body, and in line with the gun wads, would pass over the corner of the pile of cross ties.

A casual examination on the part of a physician, and one other witness, showed that the bullets ranged upward in the body of deceased. A short time after the shots were fired, Burke Ford, the appellant in this case, was seen in front of the court-

house, and there admitted voluntarily that he had killed Wooley, and, when asked what he killed him for, he said that that was his business, and that he did not care to say.

It was shown in evidence by several witnesses that the deceased and the accused had had trouble several months prior to the killing, and that as a result of that difficulty an indictment had been returned against the accused, charging him with an assault with the intent to kill the deceased; that this indictment was secured upon the testimony of the deceased, who was to be a witness at the trial, which was to have taken place at the December term of court in 1909. It was also shown that the accused had been in the habit for some time of carrying a double-barreled shotgun with him wherever he went, and one witness testified that on the night before Christmas he saw some one near Wooley's house that very much resembled the accused, but that he was not positive that it was he, and that he was carrying something that looked like a stick.

It was shown by witnesses that behind the pile of cross ties, heretofore mentioned, the ground had been considerably tracked up, and the theory of the prosecution was that the accused had stationed himself behind this pile of ties, and there had patiently awaited until the deceased passed along the road, which came from his house, and which the accused knew he (deceased) would travel that evening; that when he did come along later he fired on him at close range with two barrels loaded with buckshot.

The appellant testified that he shot the accused, and that he did so acting in self-defense; that numerous parties had told him that the accused had threatened his life; that he (deceased) went armed at all times, and that therefore he carried his gun with him that he might protect himself from any assault that the deceased might make upon him; that on the night of the killing he was coming down the street, when he saw the deceased approaching him; that he stepped out of the road in order that the deceased might pass without his being seen, and therefore that a difficulty might be avoided. He testified, however, that the deceased recognized him, and, uttering an oath, declared, "I have got you now!" And at the same time threw his right hand to his hip pocket, as if in the act of drawing a revolver

therefrom; that he, from the action of the deceased, was convinced that he was about to make a deadly assault upon him, and was even in the act of drawing a pistol for that purpose, and that he cocked one of the barrels of his gun, and, without putting the gun to his shoulder, fired; that he did not know when he cocked or fired the other barrel; that he went home, and afterwards surrendered to the sheriff, telling him that he had killed the deceased.

Appellant also testified that he had. no desire to get the accused out of the way, so that he might not testify against him; that he had even left the county and State in order to avoid having difficulties with him.

Appellant introduced as a witness a colored man, who lived on his brother's place, who testified that at about 8 o'clock on the evening of the killing he met the accused down the street across the railroad, and that he spoke to him, and the accused told him he was going to his brother's house; that this was about 8 o'clock, and before the shooting.

This testimony does not correspond with the testimony of J. E. Hennegan, a witness for the State, who testified that, after the shooting, he and the circuit clerk and one other party saw the accused in front of the court house, at which time he admitted that he had killed the deceased, and that his reasons for doing so he did not desire to divulge; that at this time it was not yet 7:30; that he knew this because the train had not come.

The testimony of the negro about meeting the accused walking down the street towards his brother's house was for the purpose of showing that if that were the accused he could not have been stationed behind the pile of ties, lying in ambush for the approach of the man whom he afterwards killed.

The accused testified that he was not behind the pile of cross ties, but was some six or eight feet from the end thereof. The accused also denied that the deceased made any statement or outcry, except that mentioned above, before the fatal shots were fired, but stated that, after he fired the first time, the deceased did make some statement, but what it was he did not know.

C. C. DuBose, a witness. for the State, testified: "I am the clerk of the circuit court, and was last December and January.

There was a case pending in court here in which Burke Ford was charged with an assault with intent to kill on one C. G. Wooley, in which Wooley was a witness here at that term of court. The case was set for trial a week after that time; don't know exact date. Wooley was killed in December, and the trial was set for the following Monday or Tuesday. Yes, sir; charged with assault with intent to kill. Defendant was under bond."

Other testimony will be noted along with the objections to it.

The court gave thirteen instructions at the request of the State, each being objected to by defendant; gave six on the part of defendant and refused to give instruction number three asked by defendant, which reads:

"3. The jury are instructed that if they find from the evidence that prior to the shooting the deceased had made threats against the life of the defendant, and that these threats had been communicated to the defendant before the shooting, then you are told that the defendant had a right to arm with a shotgun for the purpose of protecting his own life against such threatened assaults; and if you find that after a knowledge of these threats defendant met deceased, and at said time the words and conduct of deceased were of such hostile nature as to lead the defendant, acting as a reasonably prudent person, to believe that the deceased was then in the act of carrying such threats into execution, then you are told that he was not required to retreat, but had a right to shoot the deceased."

From the verdict of guilty and judgment defendant appealed.

It is contended that the court erred in permitting the introduction of certain testimony over defendant's objection, and in refusing defendant's requested instruction number three. Was error committed in refusing said instruction? We do not think so. The defendant would not have the right to arm himself to protect his life against threatened assault by another and seek him and provoke him to a difficulty, and then when the danger appeared to be imminent and impending stand his ground and slay his adversary to prevent great bodily harm or death to himself; and this idea of defendant being without fault in not having invited or provoked the assault should have been in-

cluded in the instruction. *Bishop* v. *State,* 73 Ark. 568; *Nash* v. *State,* 73 Ark. 399; *Blair* v. *State,* 69 Ark. 558.

Defendant's next contention that the court erred in permitting a witness for the State to testify that at the time of the shooting he heard some one, without knowing who it was, hollo, "Oh, don't!" is without merit. John Tuland stated that he saw the flash of the gun's fire over close to Ingram's house, heard the exclamation "Oh, don't!" emanating from the vicinity of the firing, and at about the same time he saw the flash. He did not know whose voice it was, could not say whether it was made by deceased, or some one else, but that it was in the immediate vicinity of the firing and simultaneous with it. There was no evidence from which it could have been inferred that the statement was made by some bystander or eyewitness, and, even if it had been, it was a spontaneous exclamation, clearly a part of the *res gestae,* and admissible as such. Wigmore, Evidence, § § 1755, 1790; *Appleton* v. *State,* 61 Ark. 590; *Beal-Doyle Dry Goods Co.* v. *Carr,* 85 Ark. 479; Wharton on Evidence, 258, 267; 11 Ency. Evidence, 316.

Neither do we think there was error in permitting witnesses to state where a line drawn across the gun wads and on across the body of deceased would strike a certain house beyond the body, nor where such line drawn from near the corner of the house where the bullets struck across the body and on over the wads would strike a pile of cross ties at the other end. It seems to us this is but an accurate way of describing the conditions to the jury, and it would certainly not require any previous training or skill on the part of the witness to testify thereto.

It is further objected that nonexpert witnesses were permitted to testify to the range of the bullets in the body of deceased; but, if such was error, it was not prejudicial, since Dr. Bright, a duly qualified expert witness, testified that they ranged upwards, and there was no dispute about it anyway.

The testimony of Dean Gaines that he had seen some one near Wooley's house at night the week before the killing, that it looked like Burke Ford, but he didn't know who it was, and whoever it was appeared to have a stick in his hands, could not have been prejudicial, if it was error, since the court directed the jury at the time to disregard it entirely unless the evidence showed it was Ford.

We do not think the court erred in permitting the introduction of testimony showing the disturbed condition of the ground between the ties or behind the pile of ties, as though some one had stood or walked there, when witnesses could not say whether the tracks were made by persons or animals or on the night of or the morning after the shooting, as it was a circumstance that could be taken into consideration, however little weight it would be entitled to before the jury.

Now, as to the introduction of the evidence by the circuit clerk, DuBose, that an indictment had been found against defendant Ford for assaulting Wooley with intent to kill upon deceased's testimony as prosecuting witness: it is not proper to attempt to prove one guilty of one offense by evidence that he has been indicted for the commission of another offense; but we can not think it improper to prove such fact to show the state of feeling existing between the same parties, as in this case, and there could have been no prejudicial error in permitting it since many other witnesses testified to it, and defendant himself stated he had cut deceased with a razor, and had returned to stand trial therefor, and had this very night been to town to see his lawyers relative to the defense of the case. We also think it was permissible to show this indictment, found upon the testimony of the deceased as prosecuting witness, as conducing to prove a motive on the part of defendant for the killing.

All the testimony about the introduction of which defendant complains only tended to convict him of murder in the first degree; and since the jury have found him guilty of a much lower grade of offense, it is apparent that no harm has been done him by its introduction. On the whole case, we do not find any reversible error, and the judgment is affirmed.