Tippett *v.* State.

4802                                   278 S. W. 2d 110

Opinion delivered April 11, 1955.

[Rehearing denied May 16, 1955.]

*A. M. Coates,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

WARD, J. Appellant, Leroy Tippett, was charged with and convicted for the crime of murdering his wife, allegedly committed on June 11, 1954. The jury returned a verdict of first degree murder without recommendation, and the court thereupon sentenced appellant to death.

Appellant who was about 38 years of age lived with his wife and three children in the country approximately 4 miles west of West Helena. He was employed at the Pekin Wood Products Company in West Helena where he had worked for approximately 9 years. After finishing his work on the date above mentioned, which was a Friday, and after receiving his weekly pay check appellant, as was his custom, went to Helena for the purpose of buying groceries. While there he also spent some time looking at an automobile which resulted in his arrival at home about 6:30 or 7:00 o'clock in the evening. Apparently because of appellant's late arrival at home an argument took place between him and his wife which finally resulted in appellant inflicting several serious wounds on the head and body of his wife followed by her death about 9:00 P.M. of the same day and some thirty minutes after she was taken to a hospital.

The evidence clearly shows that appellant's wife had approximately 27 lacerations on her head, a split lip, a broken left arm, some bruises on her shin and toes, and something like 40 bruises and lacerations on her body. Appellant does not deny that he fought with his wife or that he inflicted some of the wounds on her body. It was and is his contention, in general, however that he was forced to defend himself against his wife who attacked him with a butcher knife, and that he seized the handle off a frying pan and struck his wife on the head, and that he then hit her with a part of a rotten hoe handle to keep her from getting hold of an ax.

Aside from appellant's objections to the introduction of certain testimony, all of which will be later discussed, he makes the over-all contention that the evidence fails to show the malice and intent to kill which are necessary to sustain a conviction of first degree murder. As an indication of the lack of the intent to kill it is pointed out, generally, that appellant had the means and ample opportunity to kill his wife instantly had he intended to do so. In support of this it is also pointed out that he made an effort to obtain medical aid. In this same connection it is likewise argued that the jury's verdict must have

been the result of bias and prejudice, as indicated by the lack of sufficient proof and the State's attempt to introduce incompetent testimony.

*Testimony introduced by the State* was substantially as follows: *Dan Crisp,* a deputy sheriff of Phillips County, in company with a Mr. Lawhorn, arrived at appellant's house about 8:15—apparently some thirty minutes to an hour after the altercation was over—and saw appellant crawling through the weeds near his house. When asked as to the whereabouts of his wife appellant replied "She is lying over there fooling me, trying to get me in trouble." Crisp found her unconscious lying on the ground in front of the house, near the edge of the road. "She was bloody all over and her head was cut all to pieces it looked like to me." An ambulance was called forthwith. The only explanation appellant made was that "something came up about some groceries." On further examination of the premises that night Crisp found a bloody hoe handle near or under the body which he marked and kept for future identification. At the same time Crisp removed from appellant his pocket knife and shirt, both showing blood stains, and marked them for identification. The following day witness made another examination of the premises and found a heavy stick about three feet long and a piece of iron approximately the same length weighing about three pounds lying near the spot where the body was found, both with blood on them. These were likewise marked for identification, and, together with the other items, were exhibited at the trial. Blood was found in the kitchen and in both bedrooms of the house, and on the bed.

There was testimony by neighbors that the altercation seemed to have lasted something like an hour and that appellant and his wife had previously engaged in altercations, and that on one occasion appellant, after chasing his wife down the road, caught her and struck her with his hand or fist.

*Dr. W. T. Paine* treated deceased in the emergency room when she arrived at the hospital. "She was in a

coma and shock, she was barely breathing; and she died in 20 or 30 minutes, after oxygen and blood were administered." He found "multiple" wounds and lacerations on her head—about 15 or 20—varying from one-half to one inch in length. His opinion was that deceased died from shock and loss of blood caused by the wounds.

The undertaker counted 27 lacerations on the head and neck, and the funeral director found the same 27 lacerations and also about 40 on the back and hips.

*Richard Wilson* who lives nearby learned of the altercation and called the police and Mr. Lawhorn. On his way to the telephone he passed appellant's house and saw appellant trying to flag him to a stop. He did not stop and does not know what appellant's purpose was. In about 15 minutes he returned to appellant's house and stayed until the ambulance came.

*Appellant's testimony* was to the effect that as soon as he got home, an argument started over his late arrival and his wife ". . . grabbed the butcher knife and I catches her left hand with my right hand and pushes it down beside her, she had done struck me with the knife and I says 'turn loose' and I hit her and told her to turn the knife loose and she didn't do it and I reached over on the stove and picked up something and hit her with it and she dropped the knife." The something appellant picked up was, in his own words, "a little piece off the frying pan." It is admitted by appellant that his wife did not cut him with the knife. "Q. That is what you struck her with? A. I hit her right along here (indicating the head). Q. How many times did you say you struck her trying to get her to drop the knife? A. No more than twice." Following this, according to appellant, his wife started to leave the house and he pushed her across the bed in the front room and held her a little while without hitting her until she said "let me loose I am through." Then as she went out of the door she grabbed a broom and hit at appellant but missed him and broke the handle against the door facing when she said "I am going to get this ax and knock your brains out."

Whereupon, according to appellant, he picked up a piece of rotten hoe handle "and hit her on the head and she walked off and fell." Appellant testified that he only struck his wife the licks indicated above except that he did hit her with his fist when the argument first started; that he didn't intend to kill her; that he didn't know she was seriously hurt; that within a few minutes he stopped a passing car in an effort to secure medical aid; and that if he had wanted to kill his wife he could easily have done so "in a twinkle."

*Sufficiency of the evidence.* We have carefully reviewed the record in this case and are forced to conclude that there is ample evidence to support the verdict of murder in the first degree.

Appellant's principal contention is that the testimony introduced by the State fails to show malice and intent to kill on the part of appellant. "It is true that these are necessary elements of first degree murder, but it is also true that these elements may be inferred from other facts and circumstances," as was said in *Grays* v. *State,* 219 Ark. 367, 242 S. W. 2d 701. In that case this court, quoting from *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, said: "The State is not bound to prove a motive for the killing and the absence thereof is only a circumstance to be considered with other facts and circumstances in determining guilt or innocence. *Hogue* v. *State,* 93 Ark. 316, 124 S. W. 783, 130 S. W. 167." In the case under consideration the jury, taking into account the number of wounds and lacerations inflicted upon the body of deceased, the length of time consumed in the brawl, the cause or beginning of the controversy, the acts and attitude of appellant, and all other facts and circumstances shown by the testimony, was justified in finding that appellant was guilty of wilful, deliberate, malicious and premeditated killing. In the early case of *Howard* v. *State,* 34 Ark. 433, where the facts and issues were similar to those here considered, the court, at page 440, said, with reference to intent and malice:

"Every one is presumed to intend the natural and probable consequence of his act, and though a specific

intent may not exist in the mind, the law will imply an intent to produce the effect when it is the natural and probable consequence of the act; and in cases of homicide, malice is implied, when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition."

In reviewing the verdict of the jury it is our duty here to view the testimony in the light most favorable to the State as was said in the *Grays* case, *supra,* and, as was said in *Brown* v. *State,* 208 Ark. 180, 185 S. W. 2d 274, ". . . the jury's finding, supported as it is by substantial testimony, is binding on us."

As to appellant's contention that "The verdict of the jury was the result of bias and prejudice," it is not supported by anything in the record. On the other hand such contention is refuted by what has already been said and by what is said hereafter.

*Competency of testimony.* Appellant points out several instances where it is contended the court committed reversible error in allowing the introduction of certain testimony but, as we shall indicate, no such error appears in the record.

(a) *Mrs. Lucille Hicks.* Mrs. Hicks, a witness for the State, lives about 100 yards from appellant's home and recalled the night of the killing. She was attempting to explain that she left home when her small son told her about hearing the altercation at appellant's home. Appellant objected to her stating what her little boy told her and his objections were sustained. We can see no possible prejudicial error. Mrs. Hicks never did testify as to what her little boy told her and she was merely trying to explain why she left her home.

On another occasion Mrs. Hicks testified that on one occasion within a year before the killing she saw appellant chasing his wife down the road and saw him catch and whip her. It was not prejudicial error to admit this testimony as it tended to show the feeling existing between appellant and his wife, and defendant himself admitted that it was not unusual for him and his wife to

engage in fights. Similar testimony was held not prejudicial in *Phillips* v. *State*, 62 Ark. 119, 34 S. W. 539. It was there said: ''On the trial of a party for the murder of his wife, evidence of his recent acts of personal violence upon her, coupled with oaths, is admissible to show the state of his feelings toward her and the manner in which they lived.''

(b)   *Albert Hicks,* who lives about one-quarter mile from appellant, was permitted over objections to testify that he heard someone screaming at appellant's house on the night in question. This was competent testimony as a part of the *res gestae* under the holding in *Ford* v. *State,* 96 Ark. 582, 132 S. W. 995. Moreover this testimony was rendered non-prejudicial by other competent testimony which established the same fact. See *Maxey* v. *State,* 76 Ark. 276, 88 S. W. 1009, and *LeGrand* v. *State,* 88 Ark. 135, 113 S. W. 1028. Other testimony by Hicks that he heard disturbances at appellant's home on previous nights was likewise not prejudicial for reasons heretofore stated and because appellant admits it to be the truth.

(c)   *Dr. W. T. Paine.* Dr. Paine who treated the deceased a few minutes before she died testified that she had multiple wounds and lacerations on her head and scalp. When asked how many he replied ''Just guessing, I didn't count them, I would say 15 or 20.'' This answer was objected to by appellant and the court allowed the answer to stand. We think there was no prejudice. Immediately following the above the doctor stated that he was just estimating the number. Moreover other testimony showed that there were approximately 27 wounds on the deceased's head.

(d)   *Tab Hicks.* Hicks who lived about 100 yards from where appellant lived was asked if he had ever been called on to assist in any trouble between appellant and his wife. He replied that appellant's wife came to his home one night, indicating that she had come to ask for help or assistance but appellant objected. When the court ascertained that appellant was present with his

wife at the time, it instructed the witness to answer. No possible prejudice could have resulted from this ruling. It developed later that appellant's wife never did say what she wanted and the witness told appellant and his wife to go on down the road.

(e) *Dan Crisp.* Crisp, a deputy sheriff, was at the scene of the altercation within a few minutes after it took place. He testified to finding at that time the hoe handle with blood on it. He was asked "What other evidence did you find that had the appearance of having blood on them?" Appellant objected to the phrase "having the appearance of blood." There was no prejudice because the witness answered "We didn't find anything then." Witness was then asked "What other objects did you find with blood on them?", and his reply was that the next day he went out and found the iron piece there. There was no objection to this answer.

(f) *E. P. Hickey.* Hickey is the sheriff of Phillips County and was called on rebuttal by the State. Previously deputy sheriff Crisp had testified to removing appellant's shirt and putting it away, with proper identification marks, in the custody of the sheriff. When this shirt was introduced in evidence appellant testified that it was not the shirt which he had on at the time of the altercation. In rebuttal Hickey testified that Crisp delivered this particular shirt along with other articles to him and that they had been in his possession since. Then he was asked by appellant "Of your own personal knowledge, you don't know whether it was the shirt that came off him? No, sir, I didn't take it off him." Thereupon appellant asked that the testimony be stricken. The court refused to strike Hickey's testimony and it was right in doing so. It was proper rebuttal testimony and the sheriff was merely testifying to the disposition of the shirt after it was turned over to him. His testimony was in support of the testimony offered, in chief, by deputy sheriff Crisp after Crisp's testimony had been contradicted by appellant.

A careful reading of the entire record discloses no reversible error. Appellant admits inflicting many of

the wounds found on deceased, the undisputed testimony discloses that there were a large number of wounds on the deceased's head and body, and death resulted therefrom. The jury was therefore justified in finding from all the facts and circumstances that appellant was not acting in his necessary self-defense, and that he had the intent to kill his wife when he inflicted upon her the wounds in the manner indicated.

In view of the above the judgment of the lower court must be affirmed.