## TURNER *v.* STATE.

### Opinion delivered November 15, 1915.

1. CONTINUANCES—ABSENT WITNESSES—DISCRETION OF TRIAL COURT.— When a cause was continued from a special to the regular term of the circuit court, the court will not be held to have abused its discretion when it refused a further continuance on the grounds that certain witnesses sought by the defendant were absent, in the absence of a showing by the defendant of proper diligence in procuring their attendance.

2. EVIDENCE—STATEMENTS OF THIRD PARTY—HOMICIDE.—In a prosecution for homicide, evidence of statements of accused's brother who actually fired the fatal shot, as to his opinion about a certain difficulty in which accused had been involved, held admissible.

3. HOMICIDE—ACCESSORY—INDICTMENT.—Appellant may be charged as a principal in an indictment charging murder, when he was present, aiding and abetting or ready and consenting to aid and abet, by alleging that he killed the deceased, by shooting him with a pistol, when the shooting in fact was done by another, and a conviction thereunder will be sustained.

Appeal from Calhoun Circuit Court; *Chas. W. Smith,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant was convicted of manslaughter under an indictment regularly charging him with the murder of Joe Hunter by shooting him with a pistol, and from the judgment brings this appeal.

It appears from the testimony that appellant on the night before the killing, in the town of Tinsman, was severely beaten in a fight. The town marshal, Wallingford, Johnson, the deputy sheriff, Joe Hunter, and another man assaulted him. The next morning Collin Turner, brother of appellant, came down town inquiring about the matter and trying to ascertain the identity of those engaged in the difficulty with Walter. He said to Mr. Johnson, that

he did not like the way they had treated Walter Turner the night before; that he was not going to stand for it; that he might have to stand for it, but if he did, some one else would have to stand for something.

Walter was on the side of the street in a crowd when this statement was made, while Johnson and Collin Turner were out under a tree talking. Wallingford came over and this witness, Speer, heard the Turner Brothers, appellant and Collin, talking and remembered that Walter said, "I can whip any three of the D—s—of b—s. This occurred about fifteen or twenty minutes before the killing. Walter Turner on the morning of the killing, assaulted the town marshal near the bank and, as they were fighting together, each holding to the marshal's pistol, a crowd assembled and the marshal asked Collin to take his pistol, which he did and shortly Walter was made to let the marshal up. He then started to attack B. L. Thompson, saying, with an oath, "I will get you next." Thompson drew his pistol on him, and he then called him a D—s—of a b—, and asked Collin, his brother to give him the gun. Collin refused to do this and told him he would get shot and then they left and started towards Collin Turner's store, and Thompson heard Joe Moore say to Walter, "wait until you catch him without a gun, then you can get him."

Collin Turner's store was across the street, opposite the drug store and post office and Walter Turner came up the street diagonally across from the bank, where the first difficulty had occurred, while Joe Hunter, the deceased, was standing, near the edge of the sidewalk in front of the drug store and post office. Hunter was in his shirt sleeves and was looking towards where the difficulty at the bank had occurred.

Several witnesses testified that Walter Turner said with an oath to Hunter, while advancing on him, "there is no use for you to run, you are going to get yours now." Hunter told him not to come on and that he did not want any trouble with him, when he was about thirty feet away. He continued advancing, and was warned again, and

again when he was in about eight feet of Hunter, when the latter drew a pistol from his pocket and shot Walter in the shoulder.

John Moore then grabbed Walter and tried to push him back and Hunter turned and started into the drug store and was shot in the back and killed by Collin Turner as he was stepping inside the door, according to the testimony of the State's witnesses.

The deceased had said nothing to Collin Turner nor had Collin been heard to say anything to him. Collin ran from towards his store with the pistol in his hand and came up to within fifteen or twenty feet of Hunter and shot him. He claimed to have fired the shot while Hunter was standing on the sidewalk with the gun presented at his brother Walter as if to fire again, and other witnesses supported his statement of it.

Hunter had gone around to the back of his barber shop the morning he was killed instead of down the sidewalk by the drug store, as was his custom, desiring to avoid meeting Walter Turner, who was in the drug store.

The testimony of the witness relating what he had heard Collin Turner say to Johnson when Walter was not present about not liking the way they had treated him the night before and that he was not going to stand for it, was objected to.

A motion for continuance was filed because of the absence of certain witnesses, in which it was alleged that Rose Edwards would testify that she went to Joe Hunter's barber shop on the morning of the killing and informed Hunter that Wallingford and Walter Turner were having a fight; that he at once put his pistol in his pocket and said, "I am going up there and kill Walter Turner," and immediately left the shop and in a short time she heard the report of the pistol at the time Hunter shot Walter Turner.

The case was continued from the special term of court called for the trial of the defendant until the regular term and the motion for a continuance was denied.

*H. S. Powell,* for appellant.

1. The motion for continuance shows that appellant had exercised due diligence to procure the attendance of the absent witnesses, Rose Edwards and Jake Wilson. Their testimony was material and would have thrown light on the question as to who was the aggressor, and the motives and intentions of the parties to the difficulty. It was not cumulative, and no other witness could supply the omission. The court erred in overruling the motion. 99 Ark. 394; 100 Ark. 301.

2. The evidence offered as to a conspiracy was not admissible. The existence of a conspiracy between two persons only, can not be established by evidence of acts or declarations of one in the absence of the other. 87 Ark. 39; 12 Cyc. 442; 45 Ark. 132; 59 Ark. 422; 77 Ark. 444.

No conspiracy was charged or proved, and the court erred in instructing the jury on that question. *Supra;* 101 Ark. 147.

*Wallace Davis,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The motion for continuance was properly overruled. The record does not show due diligence. The case had already been continued on appellant's motion from the special to the regular term, and there is no error in refusing successive motions under such circumstances.

2. There was no error in admitting evidence of a conspiracy. There was enough evidence to justify the court in holding that there was a conspiracy, and in instructing the jury on that question. 117 Ark. 384.

KIRBY, J., (after stating the facts). (1) It is contended, first, that the court erred in refusing the continuance. A continuance was granted, however, upon the first request therefor, from the special to the regular term of court and the cause set down for trial the first day and the record does not disclose the exercise of sufficient diligence by the appellant in procuring the attendance of the absent witnesses for the trial upon the day set, to war-

rant the court in continuing the cause further, because of their absence, and there was no abuse of discretion in the court's denial of the motion.

We do not think the court committed error in admitting in evidence the proof of the statement of the witnesses of what Collin Turner, who fired the fatal shot, said to him in the absence of appellant on the morning of the killing about not liking the way Walter had been treated the night before and that he was not going to stand for it.

(2) There was sufficient testimony to show in his statements of like kind to others in the presence of Walter and their being almost continually together on the morning of the killing, a concert of action between them and an unlawful common design upon their part to whip all those who had engaged in the difficulty with Walter on the night before.

In *Cantrell* v. *State,* 117 Ark. 233, the court said: "The rule in such cases is well defined and has been announced in a number of the decisions of this court. The proof of such conspiracy is another of those preliminary questions to be passed upon by the court, and where evidence is offered which is sufficient to make a *prima facie* showing of the existence of such conspiracy, then all the acts and declarations of each conspirator during the progress of the conspiracy are admissible against his co-conspirator. It is not often that these conspiracies can be shown by express agreement. Their existence is more often shown by the proof of circumstances, the concurrence of which leads one to believe that the parties are acting from a common unlawful motive."

(3) The appellant could be charged, as he was, as a principal in the commission of the crime, being present, aiding and abetting, or ready and consenting to aid and abet by alleging that he killed the deceased, Joe Hunter, by shooting him with a pistol, when the shooting in fact was done by Collin Turner. *Hunter* v. *State,* 104 Ark. 245.

There is no direct testimony that appellant had any knowledge that his brother, Collin Turner, would shoot and kill the deceased, Joe Hunter, but the testimony unmistakably shows that he was engaged in executing his threat to whip all those who had assaulted him the night before. That his brother, Collin, who had declared he did not like the way he had been treated and would not stand for it, was present when he thrashed the town marshal, immediately before the shooting, advised him against, and prevented him from attacking the deputy sheriff, after finishing the marshal, while the deputy was warning him not to do so, with his pistol presented for shooting at the time. He also knew that Collin had the pistol of the marshal and the testimony shows he was so close to Walter when he was shot by deceased as he advanced to attack him, that he shot deceased as he claims, while he was still standing with his pistol presented against Walter.

Having pursued the unlawful common design together, and the killing having resulted in its execution, whether it was contemplated or intended by Walter Turner or not, he was guilty with Collin Turner, who fired the shot, the jury having found necessarily that it was not justifiable. The majority is of the opinion that no error was committed in the giving and refusing of instructions and that there is no prejudicial error in the record. The judgment is accordingly affirmed.