## WOOLBRIGHT v. STATE.

### Opinion delivered May 29, 1916.

1. EVIDENCE—ASSAULT WITH INTENT TO KILL—EVIDENCE OF INTENT.— Where appellant was indicted as a principal for assault with intent to kill, the evidence showing concerted action between appellant and his two sons looking to the assault of one P., evidence of a threat made by one of appellant's sons, that he intended to cut P's. throat, is admissible in a prosecution of appellant, although made in his absence.

2. ASSAULT WITH INTENT TO KILL—SUFFICIENCY OF EVIDENCE.—Defendant was properly convicted of an assault with intent to kill one P. when he was present when P. was brutally assaulted with clubs by his sons, and although he did not engage in the difficulty, he approved of it and encouraged the assailants.

Appeal from Cross Circuit Court, Second Division, W. J. Driver, Judge; affirmed.

#### STATEMENT BY THE COURT.

This appeal is prosecuted by Henry Woolbright from a judgment for assault with intent to kill one B. F. Palmer.

It appears from the testimony that bad feeling was engendered as the result of appellant's failure to win a law suit brought in the justice court by him against Palmer, his tenant. He was greatly dissatisfied with the judgment, refused to pay the costs and made threats in the presence of several persons that he would beat h—— out of Palmer the first time he caught him out. As the parties were leaving town in the afternoon of the day of the trial, appellant rode out a part of the way with

W. R. Palmer, who stated, he said, "Well I fed him all the year and now he has beat me out of it," or something to that effect. Of course, I can't remember everything, but during the conversation he said, "If he don't look sharp or ain't careful, I will beat h—— out of him." Witness replied, "You have had trouble enough," and advised it would be better not to have any more.

Wash and Leman, sons of appellant, and Sam Rogers, a boy about 18 years old, started out of town riding in his wagon, overtook appellant who got in with them and came upon B. F. Palmer, a man about 57 years of age, who in company with his wife was walking home from Vanndale, each carrying some packages of groceries. They drove up to Palmer, stopped the wagon and all got out except appellant, and with clubs assaulted and beat him, knocking him down two or three times or more and he remained unconscious from the beating for a week thereafter. Two gashes were cut in his head, to the skull, one three or more inches long and the other two.

Mrs. Palmer testified that she and her husband left Vanndale about 4 o'clock with an armful of groceries and were in a half-mile of their home when overtaken by the assailants; that Wash came running with a club in his hand about 4 feet long, hallooed and told Ben " 'Hold on there, you g— d— s— of a b—, we are going to settle with you now.' " He knocked my husband down, then the wagon came up with Henry, Leman and Sam Rogers. Leman jumped out, picked up a club and drawed back to hit Ben. He said to me, 'Shut your g— d— mouth,' and throwed and hit Ben on the left shoulder, and Wash knocked him down again, and then turned to his father, Henry, who was driving the wagon and asked him if that would do, and Henry replied, 'Them is baby licks; why don't you use your pistols?' " After Ben knocked her husband down again, she asked him not to hit him any more, and he replied, " 'Now you have paid for what you eat,' and I said, 'Yes and more too.' Then

.he' told Sam to hit him and Henry said: 'Come on, that will do.'` They left laughing."

She identified the sticks that were used in beating her husband who made no attempt to resist the assault, and said he never spoke from the time he was knocked down for more than two weeks thereafter.

Neither appellant nor his son Wash testified, and Leman and Sam Rogers stated that when they came in the wagon to the turn in the road, they saw Wash talking to old man Palmer. Rogers said they were pointing their fingers at each other like they were quarreling and just before they reached them with the wagon, Wash struck at Palmer, who had his knife out, with his fist, and Leman ran up and asked what he meant by that and Palmer ran at Leman with the knife and Wash knocked him down; that the knife struck and cut Leman's coat. Palmer said something else to him that witness could not hear and Wash hit him again in the back of the head, struck him with a white oak stick witness thought. "Did not think the stick was as big as the one that was shown in court."

He testified that Henry Woolbright was in the wagon, a short distance away, all the time the fight was going on, and said nothing that he heard to encourage the fight and that he was as close to him as Mrs. Palmer. Said they went up to where the Palmers were and stopped the fight and after Wash knocked Palmer down the last time Mrs. Palmer said, "You fellows will have a job in court, if you don't mind." Wash said, "Get up and go on up the road." The first thing Wash said afterwards was, "We will have to go off somewhere to keep from paying a fine," and they did go to Helena that night and stayed away a day or two.

Leman stated that they were driving out in a wagon and his father got in after they left town and at that time they did not know where Wash was; that later he saw him and Mr. Palmer up the road and remarked, "I believe they are quarreling," and said to Sam Rogers, "Let's walk up there." When he got there he asked,

"What does this mean?" and Mr. Palmer ran at him and struck at him twice with a knife and Wash knocked him down; that his father drove up about the time Wash struck Palmer with the club the second time and they got in and drove off. That his father said nothing whatever during the fight; that he and Sam jumped out of the wagon to go to where they were fighting because his father said, "That old man has got a pistol."

Will Campbell stated over appellant's objection that Wash Woolbright before he got in the wagon going home, asked, "How far down the road is old man Palmer?" and said, "If I catch up with him, I am going to cut his throat."

The court instructed the jury, refusing to give appellant's requested instruction that the fact that Wash fled after the crime was committed, should not be considered as proof against the defendant and before the jury could find him guilty of assault with intent to kill, they must find beyond a reasonable doubt that at the time of the assault, the defendant Henry Woolbright had in mind a specific intent to kill B. F. Palmer.

*Killough & Lines* for appellant.

1. There is no allegation of conspiracy and evidence to show same was not admissible. 8 Cyc. 661; 12 *Id.* 436, 441; 101 Ark. 153; Wharton Cr. Ev. (9 ed.) § 698; 59 Ark. 430; 92 *Id.* 592; 87 *Id.* 40; 77 *Id.* 450; 87 *Id.* 40.

2. There was error in the court's charge to the jury. The fact of flight was not proof against defendant. 78 Ark. 284; 81 *Id.* 25; 12 Cyc. 441. A specific intent to kill was necessary. 94 Ark. 75; 91 *Id.* 505; 1 Wharton Cr. Law (10 ed.) 252-3.

*Wallace Davis,* Attorney General and *Hamilton Moses,* Assistant, for appellee.

1. The question of conspiracy is not involved. Kirby's Digest § 1588. Appellant was a principal. 89 N. W. 984; 104 Ark. 245; 101 *Id.* 153; 87 *Id.* 40. But if it was, there is ample proof. 98 Ark. 575; 96 *Id.* 629.

2.   The jury were properly instructed.   96 Ark. 52. The judgment is fully sustained by the evidence.

KIRBY, J., (after stating the facts). Appellant was indicted as a principal for assault with intent to kill and the testimony of the witness, Will Campbell, of the statement made by Wash Woolbright shortly before he assaulted Palmer with the club, that if he caught up with him he was going to cut his throat, made in the absence of appellant was competent to show the intent or disposition of mind of the said actor in the crime in making the assault.

The undisputed testimony shows that appellant was personally present when Palmer was brutally assaulted with the clubs by his sons and although he did not get out of the wagon and engage in the difficulty, that he approved of it and encouraged the assailants and suggested after the old man had been knocked down twice that the blows were only "baby licks, that they should use their pistols." He had stated before leaving town that he was going to beat h— out of Palmer as soon as he caught him out, and his son Leman testified that he suggested that the old man had a pistol before he and Sam Rogers got out of the wagon and went to where they were fighting. Under these circumstances, he was as guilty of the offense as was the principal actor who wielded the club. *Hunter* v. *State,* 104 Ark. 246.

The proof was sufficient to show a concert of action between the parties and the threat made by Wash Woolbright in the presence of Campbell, when his father, appellant, was not present, would have been admissible in any event against him. *Turner* v. *State,* 121 Ark. 40, 180 S. W. 211.

The court did not err in refusing to give appellant's requested instruction, directing the jury that they must find beyond a reasonable doubt that he had in mind a specific intent to kill B. F. Palmer, before they could find him guilty. Instructions were given correctly defining the offenses of murder and assault with intent to kill and appellant was guilty of the offense if his son, Wash

Woolbright, who wielded the club, did it with the intent required by law to constitute the offense as the jury found.

Appellant's witnesses, Leman Woolbright and Sam Rogers, voluntarily stated without objection, that they went that night to Helena with Wash upon his suggestion, in order not to be arrested for the offense, and the court made no reference to their flight in its charge to the jury herein, and no error was committed in refusing appellant's requested instruction relative thereto.

The instructions given by the court, correctly declared the law and the testimony is sufficient to sustain the verdict. We find no prejudicial error in the record and the judgment is affirmed.