## BOONE *v.* STATE.

### Opinion delivered April 9, 1928.

1. CRIMINAL LAW—DISCRETION AS TO POSTPONEMENT.—In a prosecution for murder where the State's witness, present with defendant at the time of the killing, was permitted to testify in rebuttal, and, after several witnesses testified in surrebuttal, defendant moved that the court adjourn until morning, it then being 20 minutes of midnight, in order that the State's witness might be impeached, *held* it was not an abuse of discretion not to permit the case to remain open for further testimony; or in refusing to open the case next morning, where, even though the witness were impeached, it would still leave sufficient testimony unimpeached, so that an exclusion of impeaching testimony was not prejudicial.

2. CONSPIRACY—UNLAWFUL COMBINATION.—The general rule is that where persons combine to do an unlawful thing, if the act of one proceeding according to the common plan terminates in a criminal result, though not the particular result meant, all are liable.

3. CONSPIRACY—PURPOSE TO COMMIT FELONY.—In a prosecution for murder, going out on the highway to start a difficulty, while armed with a shotgun and a butcher knife, *held* evidence of a purpose to commit a felony.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed.

*H. L. Veazey,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

McHANEY, J. Appellant was indicted, charged with murder in the first degree for the killing of one Harold

Robin. He was convicted of murder in the second degree, and sentenced to eighteen years in the penitentiary, and has appealed to this court to reverse the judgment and sentence against him.

This is a companion case to that of *Tracy Sanderlin* v. *State,* recently decided by this court, *ante* p. 217. The facts in this case are substantially the same as they were in that case, and we will not repeat them here. The facts show that the deceased was killed by being cut or stabbed with a knife held by Sanderlin, and appellant was indicted and convicted on the theory that he was present, aiding and abetting Sanderlin in such act. One Ed Lane is also under indictment charged with the same offense as that against appellant, but at the time of this trial he was in jail awaiting trial.

After the defense had rested, the State put Ed Lane on as a rebuttal witness, but it does not appear whose testimony his was supposed to rebut. He testified that he was with appellant and Tracy Sanderlin at the dance the night Harold Robin met his death, and that they came from the dance back to Monticello, to Jesse Boone's cafe, to which appellant had the keys, where he ate a bowl of soup; that appellant went up to the front of the restaurant and picked up a shotgun, and that Sanderlin picked up a bread knife or a butcher knife, put it up his sleeve, and that they all went back out the Wilmar road, and had the difficulty which resulted in Robin's death. Lane had not testified in the Sanderlin case, but was awaiting in jail on the charge against him, and was called out of jail by the State and used as a rebuttal witness. This was about 11:30 at night. After four witnesses for appellant had testified in surrebuttal, the following took place:

"Mr. Harris: At this point, twenty minutes to twelve o'clock—twenty minutes of midnight—and court having been in session since nine o'clock this morning, and the last witness placed on the stand by the State in rebuttal being a surprise witness to us, I would like to

ask the court to adjourn until in the morning, so we will be able to meet the proof which has been made by the State by putting on some witnesses to prove that they would not believe the witness Lane on oath. By the court: The court overrules the motion of the defendant, and holds that the defendant ought to have anticipated the introduction of this witness, and the court rules that the testimony must close tonight. Mr. Harris: The defendant states that they did not anticipate it, and would like to have until nine o'clock in the morning to impeach him—to prove that they would not believe him on oath. By the court: You can do that. You ought to have had those witnesses, but if you have not them now, the court holds that this case must close tonight, that is, the testimony. To which ruling and action of the court in refusing to grant defendant's motion to adjourn until morning the defendant at the time objected, his objections being overruled, he at the time saved his separate and several exceptions. Defendant rests. State rests.

"Note: On the morning of October 12, 1927, at the opening of court on the morning following the taking of the testimony, the defendant moved the court to be permitted to introduce witnesses to impeach the testimony of the witness Ed Lane, introduced in rebuttal on the part of the State, and offers the witness George Campster and offers to ask the following questions: Q. Do you know the general reputation of Ed Lane in the community in which he lives for truth and morality? A. (Expected answer). I do. Q. Is that reputation good or bad? A. (Expected answer). Bad. Q. Basing your answer upon his general reputation in a matter in which he is interested, would you believe him on oath? A. (Expected answer). I would not. By the court: The court refused to permit the witness to be introduced, and refused to let him testify, to which ruling and action of the court in refusing the request of the defendant the defendant objected; his objection being overruled, he at the time saved his separate and several exceptions.

"Thereupon the defendant offered to introduce the witnesses George Fish, Elmo Lawson, and E. G. Jeffcoat, whom they offered to ask the same questions and expected the same answers as shown on the preceding page, where it shows the questions to be asked of the witness George Campster and his expected answers. The court refused to permit the defendant to introduce the above witnesses, George Fish, Elmo Lawson and E. G. Jeffcoat, to which ruling and action of the court in so doing the defendant at the time objected; his objection being overruled, he at the time saved his separate and several exceptions."

This is the first error assigned by appellant for reversal.

It is urged that the court abused its discretion in refusing to permit the case to remain open until the next morning to enable the defendant to secure the witnesses named, and to have them testify to the bad reputation of the witness named, and to the fact that they would not believe him on oath. A majority of the court is of the opinion that the court did not abuse its discretion in refusing to permit the case to remain open for further testimony until the following morning, or in refusing to reopen the case the next morning to permit witnesses to testify in this regard. Appellant himself testified that he secured the gun and put it into the car, and the witness Miss Gertrude Lassiter testified that she saw Tracy Sanderlin with a large knife, something like a butcher knife, in his hand, but did not see him when he stabbed or cut Robin. Therefore, even though appellant had been permitted to impeach Ed Lane's testimony in the manner sought, still it would leave his own admission of having put the gun in the car, and the testimony of Gertrude Lassiter as to the knife, unimpeached. Hence its exclusion was not prejudicial. Mr. Justice Wood, Mr. Justice Smith and the writer of this opinion do not agree with the conclusion reached by the majority.

The next assignment of error is that the court erred in giving instruction No. 11 on behalf of the State. It is as follows:

"The court instructs the jury that, if you find from the evidence that Tracy Sanderlin, Ed Lane and Basil Boone, being in a car, stopped the same on the highway with the common intent to obstruct the same, and did obstruct the road for the common purpose of stopping any person traveling thereon, in order that they might raise a difficulty with such person; and by reason of such common conduct on their part an altercation arose, in which Harold Robin was cut and killed by either one of the three, the defendant, Basil Boone, being present, aiding and abetting in the acts and conduct aforesaid of his companions, then each of the three would be guilty of an unlawful homicide in some degree; and if the fatal injury was inflicted upon Robin with malice aforethought, but without premeditation or deliberation, then the defendant would be guilty of murder in the second degree; and if the fatal injury was inflicted on Robin with malice aforethought and after premeditation and deliberation, by either one of the three, then the defendant, Basil Boone, would be guilty of murder in the first degree."

It is objected to on the ground that it makes a common intent to commit a misdemeanor the plan itself for the commission of a felony, whereas the common plan must have been to commit a felony. We do not think the instruction is open to this objection.

The general rule is that, where persons combine to do an unlawful thing, if the act of one proceeding according to the common plan terminates in a criminal result, though not the particular result meant, all are liable. Thus, in *Carr* v. *State*, 43 Ark: 99-106, the lower court had given the following instruction:

"If the defendant was jointly with others assembled together in the commission of a trespass, or perpetration of a crime, and one or more did a criminal thing in

no way connected with the joint understanding, the defendant is not liable.''

Criticising this declaration, the court quoted with approval from Bishop on Crim. Law, § 636, as follows:

''A man may be guilty of a wrong which he did not specifically intend, if it came naturally, or even accidentally, from some other specific, or a general, evil purpose. When therefore persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminate in a criminal result, though not the particular result meant, all are liable.''

We do not think the instruction is subject to the criticism that it makes the common plan to commit a misdemeanor the foundation for a conviction of a felony. As the language of the instruction, ''stopped the same on the highway with the common intent to obstruct the same, and did obstruct the road for the common purpose of stopping any person traveling thereon, in order that they might raise a difficulty with such person.'' Raising a difficulty with some person might or might not be a misdemeanor, but going out to start a difficulty, armed with a shotgun and a butcher knife, is some evidence of a purpose to commit a felony. It depends upon what kind of a difficulty was raised.

What we have said with reference to this instruction also disposes of appellant's contention that the court erred in refusing to give his requested instruction No. 10.

It is also urged in this case that the court erred in refusing to instruct the jury on manslaughter, as requested by him. We held in the Sanderlin case that the evidence there did not justify an instruction on manslaughter. We have examined the record here and fail to find any additional evidence which would have justified the requested instruction.

No errors appearing, the judgment is affirmed.