John Henry WARREN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 25, 1960.

Lay & Knuckles, Grant F. Knuckles, Pineville, Ray C. Lewis, Wm. J. Weaver, London, Wm. L. Rose, Williamsburg, for appellant.

Jo M. Ferguson, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

John Henry Warren, the appellant, Everett Perry and three other men were jointly indicted in the Knox Circuit Court for the murder of Woodrow Smith. Venue for the trial was changed to Laurel County on the defendants' motion. On a separate trial, Warren was convicted of murder and sentenced to life imprisonment.

On March 31, 1959, the appellant and a number of other labor union miners, then on strike, assembled at Arjay in Bell County and formed a motorcade of forty or fifty automobiles to go out, as appellant says, on picket duty. The motorcade, under the leadership of Taylor Maddox, a field representative of the union, went into Knox County. It appears the caravan divided into sections. Twenty or twenty-five cars, including those in which the defendant and Perry were riding, parked a mile or more from the scene of the homicide. The deceased, Smith, operated a small mine on Stinking Creek, the road to which and the general terrain of which are very rough and rugged. It appears several of the men walked up toward or to the mine. They approached in different directions in going to see Smith for the ostensible purpose of inducing him to sign a labor contract with the United Mine Workers Union.

After the case was ready for the trial to begin, the indictment against Perry was dismissed. When it became known that Perry would testify in behalf of the Commonwealth, the defendant, Warren, moved the court to discharge the jury and to continue the case on the ground of surprise. Perry's testimony proved to be vital to the prosecution's case. He had testified before a court of inquiry conducted soon after the homicide, and it appears the defendant knew what his testimony would probably be on this trial. The court exercised a proper discretion in overruling the motion of continuance. We cannot accede to the appellant's claim that this denied him a fair trial.

It appears that as the union men were approaching, Smith attempted to evade them. Several of the men were armed. Perry testified he dropped out from the group following Smith when he passed from their sight around a bend in the road. He stepped behind a big rock by the side of the road and was there when the defendant, Warren, came along and asked him where Smith had gone. He told him he didn't know and suggested to Warren that they go back. Warren replied, "Hell no, let's not go back." About that time Smith came into view. Warren said, "There he goes down the hill" and started after Smith. Perry heard some shooting around the hill. We gather from Warren's testimony that Smith was doing some of that shooting. Smith came along and Perry, according to his testimony, hollered to him, saying, "Lord have mercy, Buddy, you had better stop. Them damn fools are going to shoot you." Smith went on a little distance and then pulled a pistol from his pocket and threw it in a briar patch. Warren appeared and picked up the pistol. Perry said to him, "Let me have that thing," and he replied, "No," and put the pistol in his pocket and walked off. Perry "walked down" and began talking to Smith, who was sitting or

hunkered down. In the presence of Warren, who was five or six feet away, Perry told Smith that Maddox had sent them up there to talk with him and his men about joining the union. Smith answered, "O.K." Perry related that at this period "some big fellow" who had a pistol and another unidentified man, while "down the hollow," maybe a hundred feet away, said, "That scabbing son-of-a-bitch there, I'll fix him." Perry then heard some shooting and turned around and saw Smith had fallen over on his arm. Warren was there "with a gun in his hands," five or six feet from him. Perry ran up to the fallen man and said to Warren, "John Henry, you are a damn fool," and Warren walked off down the hollow.

We interrupt the narrative to consider the point that the court committed an error in failing to instruct, as was held to be proper in Skillian v. Commonwealth, 206 Ky. 586, 268 S.W. 299, and other cases, that the jury should not consider the statements of the unidentified man against the defendant unless the jury believed beyond a reasonable doubt that a conspiracy had been formed and was then in existence and that the spokesman was a co-conspirator with the defendant and the statement was made in furtherance or execution of the common purpose.

■ While the indictment contained a count charging murder pursuant to a conspiracy, the appellant continues to claim that the men had assembled and gone to the place for the purpose of "peaceful picketing." The evidence does not justify the conclusion that there was any specific conspiracy to harm or murder Smith, and the court did not instruct upon conspiracy. It is not clear whether or not the statement of the unidentified man was heard by the defendant. But the statement was substantially contemporaneous with the entire act and admissible as res gestae. Jones v. Commonwealth, 249 Ky. 502, 60 S.W.2d 991; Reynolds v. Commonwealth, 249 Ky. 644, 61 S.W.2d 288.

■ Perry testified he walked over to the wounded man and put his arm around his neck to help him when some unknown person came up the hollow and cried out, "You had better come over here and get away from there. Don't you touch him." Perry obeyed the warning and started away. Smith exclaimed something that sounded like, "Oh, Lordy, oh, Lordy," and Perry turned back and said to Smith, "God in heaven knows I didn't do this. I tried to keep them down." On cross-examination it developed that while Warren had walked away after shooting Smith, he was standing not very far away. The objection to this testimony was properly overruled, for it too was res gestae. Rogers v. Commonwealth, 161 Ky. 754, 171 S.W. 464.

We relate the foregoing details because they bear on the question of whether it was error in the court not to have given an instruction that if the jury believed Perry was an accomplice of the defendant, he could not be convicted without corroborative evidence. Criminal Code of Practice, § 241.

■ Perry certainly started out with the mass movement of the striking miners. But it is clear from his undenied testimony that when violence developed, he not only refused to participate in the intimidation of Smith, but sought to prevent Warren from harming him. The familiar definition of an accomplice is one who participates in the commission of a crime, whether as a principal aider and abettor or accessory before the fact. The usual test is whether or not the witness could be convicted of the crime with which the accused is charged. Solomon v. Commonwealth, 208 Ky. 184, 270 S.W. 780; Montjoy v. Commonwealth, 262 Ky. 426, 90 S.W.2d 362. Mere association with the accused or mere presence at the time of the commission of the offense does not make one an accomplice. Head v. Commonwealth, Ky., 310 S.W.2d 285.

■ It is well recognized that one who enters into a conspiracy may voluntarily withdraw from or abandon it prior to the

overt act required to constitute or to consummate the offense and thereby preclude prosecution or conviction. 15 C.J.S. Conspiracy § 77. As stated in 22 C.J.S. Criminal Law § 791, "Where a party to a conspiracy to commit a crime withdraws from such conspiracy before the crime is committed, and the crime is afterward committed without him, he is not an accomplice."

The defendant admitted killing Smith and claimed self-defense because Smith, while hunkered down, made some movement toward his pocket that led Warren to believe he was in danger. Smith was unarmed at the time. An autopsy revealed he had been shot five times, two of the bullets having entered behind his left ear.

Upon the whole case we are convinced no error prejudicial to the substantial rights of the appellant was committed.

Judgment affirmed.