Robert L. LISENBY *v.* STATE of Arkansas

CR 76-47                          543 S.W. 2d 30

Opinion delivered November 8, 1976
(In Banc)

*Reinberger, Eilbott & Smith,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jack Lassiter,* Asst. Atty.
Gen., for appellee.

J. Fred Jones, Justice. The appellant Robert L. Lisenby was charged on information filed by the prosecuting attorney with the crime of "assault with intent to kill by use of a firearm." He was found guilty at a jury trial and sentenced to 27 years in the state penitentiary with at least nine years to be served before parole.

On appeal to this court Lisenby has designated eight points on which he relies for reversal, but having concluded that he was entitled to a directed verdict as contended under his third point, we find it unnecessary to discuss the other assignments.

The information filed against Lisenby also included a co-defendant, Barney B. Norton, and the specific charge in the information was as follows:

> The said defendants on or about the 2nd day of February, 1975, in Garland County, Arkansas, did unlawfully, wilfully and with malice aforethought make an assault upon one Norman Hall and Richard James with a deadly weapon, to-wit: a handgun by then and there shooting at them, the said Norman Hall and Richard James with said gun then and there had and held in the hands of him, the said Barney B. Norton, with the unlawful and felonious intent then and there, them, the said Norman Hall and Richard James wilfully and maliciously to kill and murder, in violation of Ark. Stats. Ann. 41-606, and the use of said firearm in the perpetration of the said assault being in violation of Ark. Stats. Ann. 43-2336.

The facts appear as follows: In the early morning hours of February 2, 1975, one Norman Hall, a security guard at the Diamondhead Resort in Garland County, discovered that the "Pro Shop" at the resort had been burglarized and a quantity of merchandise had been removed therefrom. A golf cart was also missing and the golf cart was located near the premises adjacent to Highway 290. The canvas top of the golf cart had been removed and placed on the ground near the cart and the stolen merchandise was placed on top of the canvas top.

Mr. Hall and Richard James, in charge of golf course maintenance and construction, secreted themselves where they could watch the merchandise and around 6:30 A.M. an automobile stopped near the merchandise and two men got out of the automobile. The automobile traveled a short distance where it turned around and stopped again at the same location where it had first stopped. The two men went to the golf cart cover and started back toward the automobile carrying the canvas cover with the merchandise thereon between then. Mr. Hall shouted to the two men to halt and fired a pistol shot over their heads. The appellant Lisenby stopped and fell forward to the ground and his companion ran a distance of about 360 feet where he entered the waiting automobile. Mr. Hall then approached Lisenby and ordered him to get up from the ground, which Lisenby did, and at this point three shots were fired from the direction of the automobile. The bullets struck the ground near where James, Hall and Lisenby stood and Mr. Hall placed Lisenby between himself and the direction the shots were coming from.

A crime of assault with intent to kill and the penalty provided therefor are set out in Ark. Stat. Ann. § 41-606 (Repl. 1964) as follows:

Whoever shall feloniously, wilfully and with malice aforethought, assault any person with intent to murder or kill, or shall administer or attempt to give any poison or potion with intent to kill or murder, and their counselors, aiders and abettors, shall, on conviction thereof, be imprisoned in the penitentiary not less than one [1] nor more than twenty-one [21] years.

Thus, it is seen that "feloniously, wilfully and with malice aforethought" are necessary elements of an assault with intent to murder or kill, and Lisenby was charged in the language of this statute. To sustain an indictment for an assault with intent to murder, the evidence must be such as would warrant a conviction for murder if death had ensued from the assault. *McCoy* v. *State,* 8 Ark. 451; *Lacefield* v. *State,* 34 Ark. 275; *Allen* v. *State,* 117 Ark. 432, 174 S.W. 1179; *Francis* v. *State,* 189 Ark. 288, 71 S.W. 2d 469. Of course, intent to kill may be inferred from acts and circumstances of the

assault but it cannot be implied as a matter of law. *Ward* v. *State*, 208 Ark. 602, 186 S.W. 2d 950.

The above comments are especially important in the light of additional statute, Ark. Stat. Ann. § 41-2507 (Repl. 1964), which provides as follows:

> If any person shall shoot at any person, with the intent to kill or wound, although he may miss or fail to hit the person aimed at, he shall be deemed guilty of an attempt to kill or maim, and on conviction shall be fined not exceeding three thousand dollars [$3,000], and imprisoned not exceeding seven [7] years.

In *Lacefield* v. *State, supra,* the distinction as to intent becomes important as between the two statutes. In *Lacefield* we said:

> The proposition is incontrovertible that to sustain an indictment for an assault with intent to murder, the evidence must be such as to warrant a conviction for murder had death ensued from the assault.

This court has said that in order to convict for assault with intent to kill, the state must prove without a reasonable doubt that an accused committed an assault and that it was with intent to murder. *Allen* v. *State,* 117 Ark. 432, 174 S.W. 1179. It is elementary under Arkansas law that one who is present, aiding and abetting in the commission of a crime is equally guilty as reiterated in *Cheeks* v. *State,* 169 Ark. 1192, 278 S.W. 10; *Woolbright* v. *State,* 124 Ark. 197, 187 S.W. 166, and *Lacy* v. *State,* 177 Ark. 1056, 9 S.W. 2d 314. These were assault with intent to kill cases but in them the accused, unlike Lisenby, were aiding and abetting in the commission of the crime charged or at least there was evidence from which the jury could have so found.

In 23 C.J.S. § 786 (2) is found the following:

> In order to be an accomplice, one must in some way be connected with the crime charged against accused. Thus, it is not sufficient that he was connected with the accused in commission of other offenses.

See *State* v. *Walters*, 209 P. 349, 105 Or. 662. See also *Coleman* v. *State*, 121 A. 2d 254; *People* v. *Webb*, 25 N.Y.S. 2d 554, reversed on other grounds, 26 N.Y.S. 2d 386; *State* v. *Bowman*, 70 P. 2d 458, 111 A.L.R. 1393; *Washburn* v. *State*, 318 S.W. 2d 627; *Warren* v. *State*, 132 S.W. 136. See also *Soloman* v. *Commonwealth*, 270 S.W. 780; *People* v. *Cowan*, 101 P. 2d 125; *Warren* v. *Commonwealth*, 333 S.W. 2d 766.

There is considerable difference in the case at bar and such cases as *Bosnick* v. *State*, 248 Ark. 846, 454 S.W. 2d 311. In *Bosnick* a father and son and two other young men were in the process of robbing a store when a policeman appeared on the scene and two of the robbers shot and killed the policeman. Each participant was charged with first degree murder. Bosnick, Sr., took the other defendants to the grocery store; all of them were armed and Bosnick, Sr., waited outside the store while the other three carried out the robbery with stocking masks over their faces. The defendants in *Bosnick* were not charged with the homicide in perpetration of robbery, but were simply charged with first degree murder. We pointed out in *Bosnick* that when a group plans an armed robbery, "Each one of the party would be responsible for everything done which followed directly and immediately in the execution of the common purpose as one of its probable and natural consequences." Citing *Clark* v. *State*, 169 Ark. 717, 276 S.W. 849 (1925). Then in *Bosnick* we continued as follows:

> [T]he jury could have attributed to the elder Bosnick a full share of responsibility for what took place inside the Gatteys store, even though the original plan did not contemplate a homicide. *Henry* v. *State*, 151 Ark. 620, 237 S.W. 454 (1922). But the jury was not required to do so. By the decided weight of authority, and by what we regard as the better rule, the jury may assign degrees of guilt among the conspirators in accordance with their respective culpability.

In the case at bar the evidence is clear that Lisenby was associated with Norton and another individual in the theft of the merchandise from the Pro Shop, but Lisenby was apprehended in the theft of the merchandise. He offered no resistance to his arrest and was under the observation and

complete control of the arresting officers when the shots were fired toward him and the officers. All three participants in the attempted theft of the merchandise abandoned the merchandise when the officers appeared, Lisenby surrendered and the other two ran away. After Lisenby was completely in custody offering no resistance whatever, one of his two former companions in fleeing from the scene fired three shots in the direction of Lisenby and the officers, and that was the sole basis for the charge against Lisenby of assault with intent to murder or kill.

As already pointed out, to sustain a conviction for assault with intent to kill the evidence must be such to have sustained a conviction for murder had the homicide occurred. In *Jones* v. *State,* 89 Ark. 213, 116 S.W. 230, the appellant was convicted of the crime of assault with intent to kill. The evidence was to the effect that the appellant chased the prosecuting witness with an ax threatening to kill him, but never did get in striking distance. In reversing the judgment, this court said:

> There was no evidence to show that appellant at any time had the present ability to injure Carter in the manner alleged in the indictment. It is argued that appellant might have thrown an ax at Carter and have injured him with it in that manner. But the proof does not show that appellant made any effort to injure the prosecuting witness by throwing the ax at him. Even if an injury could have been inflicted in that manner, it was not attempted. Appellant must be convicted, if at all, upon the attempt he actually made, and not upon what he might have done had he made the attempt. So the evidence is not sufficient to sustain the verdict, and the court should have set it aside for that reason.

In the case styled *Slim and Shorty* v. *State,* 123 Ark. 583, 186 S.W. 308, peace officers were advised of a train robbery and attempted to arrest the appellants who had alighted from the train. Upon approaching the appellants the officers said to them: "Boys, we want you; put up your hands." (The appellants refused to give their names and were referred to as Slim and Shorty). The evidence was to the effect that both appellants were armed when apprehended and that they

"started for their guns" when the officers accosted them. Slim's gun hung in its holster and Deputy Sheriff Pierce told another deputy to watch Slim, Pierce then told Shorty not to pull his gun. Shorty, nevertheless, pulled his gun and pointed the gun at the face of Deputy Finley. Finley and Pierce fired about the same time and Shorty fell. Pierce then immediately looked at Slim and Slim's hands were going up and his gun fell out in front of him. Both appellants were indicted for the crime of assault with intent to kill and also jointly indicted for the crime of resisting an officer. They both were convicted on the charge of resisting an officer and Shorty was convicted of assault with intent to kill. In reversing Shorty's conviction for assault with intent to kill, this court said:

> There was testimony tending to show that when the officers approached the appellants the driver ran the motor car up within a few feet of them and the officers jumped out with their guns presented towards the appellants before anything was said by the officers. A majority of the court is of the opinion that the testimony is not legally sufficient to sustain a conviction of appellant Shorty for the crime of assault with intent to kill, and that the court erred in not granting his motion for a new trial as to this offense.

In the Kentucky case of *Warren v. Commonwealth*, 333 S.W. 2d 766, the appellant Warren, Everett Perry, and three other men, were jointly indicted for the murder of Woodrow Smith. Smith operated a small coal mine and the appellant and Perry were members of a local union which was on strike. The homicide grew out of an effort on the part of the appellant Warren, Perry, and other union members to force Smith and his employees to join the union and participate in the strike. Warren and Perry and other members of the union armed themselves and converged on Smith's coal mine. As they approached the mine, Perry dropped out of the group and suggested to Warren that he do likewise but Warren insisted on going on. Smith, in an attempt to elude the group, passed by where Warren and Perry were standing and Perry warned Smith that the group was going to kill him. Smith threw his own pistol to the ground and Warren retrieved it. Perry asked for the pistol and Warren refused to surrender it

but put it in his pocket and walked off. Perry walked to where Smith had stopped and advised him that they had come up to talk with him about joining the union. At this point other shooting started. Perry saw Smith fall over and saw Warren standing about six feet away with a gun in his hand. He called Warren a "damn fool" and Warren walked away. The question on appeal was whether the court erred in not giving an instruction that if the jury believed Perry was an accomplice of the defendant, Warren could not be convicted without corroborative evidence, and in affirming the judgment the court said:

> Perry certainly started out with the mass movement of the striking miners. But it is clear from his undenied testimony that when violence developed, he not only refused to participate in the intimidation of Smith, but sought to prevent Warren from harming him. The familiar definition of an accomplice is one who participates in the commission of a crime, whether as a principal aider and abettor or accessory before the fact. The usual test is whether or not the witness could be convicted of the crime with which the accused is charged. *Soloman* v. *Commonwealth,* 208 Ky. 184, 270 S.W. 780. *Mountjoy* v. *Commonwealth,* 262 Ky. 426, 90 S.W. 2d 362. Mere association with the accused or mere presence at the time of the commission of the offense does not make one an accomplice. *Head* v. *Commonwealth, Ky.,* 310 S.W. 2d 285.

In the Oregon case of *State* v. *Walters,* 209 P. 349, two soldiers, Walters and Tillman, while A.W.O.L., committed several robberies in Portland. Policemen Palmer and Thorpe intercepted Walters and Tillman on a street corner and quoting from the opinion the following occurred:

> When the officers met the soldiers at the corner, Thorpe said: "Boys, just a minute; I want to see you." Tillman "stopped right there," but Walters "walked right on — stepped off the curb." Palmer gave his attention to Walters, and Thorpe gave his attention to Tillman. Thorpe ordered Tillman to take his hands out of his pockets, and Tillman "had just started to pull his hands out of his pockets when Walters shot Palmer." Thorpe

immediately took his "gun off of" Tillman and shot at Walters, and it is probable that this was the shot which wounded Walters in the shoulder.

Walters proceeded about 14 feet after he and Tillman were accosted by Thorpe, and Walters was only 5 or 6 feet from Palmer when he shot Palmer.

Tillman testified for the state at Walters' trial and testified as to the robberies prior to the homicide. It appears that the statutes of Oregon contain a subdivision in § 868 "that the testimony of an accomplice ought to be viewed with distrust," and the appellant assigned error in the trial court's failure to give an instruction to that effect. In disposing of this contention the Supreme Court of Oregon said:

Tillman was an accomplice in the commission of the three robberies; but the record does not disclose a word of evidence having the slightest tendency to show that he participated in or was connected with the homicide. Tillman was not an accomplice in the killing of Palmer, and therefore the trial judge properly omitted to instruct the jury about viewing the testimony of an accomplice with distrust.

We conclude that the same situation exists in the case at bar. There is no evidence whatever, either circumstantial or otherwise, that Lisenby entertained any malice aforethought, or any intent to murder, or kill anyone, and there is no evidence that he counseled, aided or abetted in firing the shots toward him and the officers. There is not even any evidence that Lisenby participated in the burglary. It is true he was participating in retrieving the stolen merchandise when accosted by the officers, but he had submitted to arrest and his former companions had made good their escape when the shots were fired. Whether the shots were fired at Lisenby, the two officers, or at all three, is not in evidence. It would require the highest degree of speculation to say they were fired at the officers to effect Lisenby's release, or fired at Lisenby to silence him. It would also be pure conjecture and speculation to say the shots were fired as a probable and natural consequence of burglary under the evidence of record in this case.

The judgment is reversed and the cause dismissed.

HARRIS, C.J., concurs in part, dissents in part. FOGLEMAN, J., dissents.

CARLETON HARRIS, Chief Justice, concurring in part, dissenting in part. I agree with the Court that this case should be reversed, but I would not reverse and dismiss; rather, I would remand for another trial.

It is my view that the Court committed error in giving its instruction No. 5. That instruction reads as follows:

When persons combine to do an unlawful thing, if the act of one, proceeding according to common plan, terminates in a criminal result, though not the particular result meant, all are liable.

If the defendants, or either of them, drew a weapon on Norman Hall and Richard James, their victims, with the common intent to effect an unlawful theft of property belonging to the Diamondhead Pro Shop or to prevent apprehension by the victims while engaging in the commission of an unlawful theft or in furtherance of such criminal act, and, by reason of such conduct on their part, such weapon was fired at the victims, or either of them, with the present capability to kill them, then each of the defendants, being present, aiding and abetting the acts and conduct aforesaid, would be guilty of an unlawful assault and, if such acts were done with malice, then the defendants would be guilty of assault with intent to kill. Malice shall be implied when no considerable provocation appears or when all the facts and circumstances manifest an abandoned or wicked disposition. Intent to kill may be inferred from facts and circumstances tending to reveal the state of mind of the defendants. It is not necessary for the state to prove that defendants weighed in their minds the consequences of a course of conduct before they acted.

In other words, a man may be guilty of a wrong which he did not specifically intend if it came naturally, or even accidentally, from some other specific or general

evil purpose.

This instruction, in my view, told the jury that if they found that either Norton or Lisenby fired a weapon at the officers under the circumstances set out in the majority opinion, then *both* were guilty of an unlawful assault, and if the firing was done with malice, then *both* would be guilty of assault with intent to kill. It was undisputed that the other party who had been with Lisenby had fired a weapon in the direction of the officers.[1]

The instruction was specifically objected to, it being appellant's contention that he was entitled to have the jury pass upon the question of whether his participation with Norton had terminated at the time of his surrender to the officers, and that the Court's instruction did not afford the jury this opportunity. I agree. It is true that counsel did not offer a written instruction, but to have done so would have been futile since the Court in announcing the instructions that it intended to give stated:

> Now, gentlemen, you may make your objections to the Court's instructions into the record. And you may also make your objections because I am not giving whatever instructions you think should be given in place of the Court's instructions. I have taken the liberty of studying this thing fairly well.

I would reverse, but remand for another trial.

JOHN A. FOGLEMAN, Justice, dissenting. I do not agree that there was no substantial evidence to support the jury verdict finding appellant Lisenby guilty of assault with intent to kill. The "pro shop" at Diamondhead was burglarized. The burglars Norton, Lisenby and an unidentified person were in the process of transporting the loot when surprised by Hall, the chief of security at Diamondhead, and his companion, Richard James. Lisenby did not voluntarily surrender. He dropped the canvas on which the stolen goods were being

---

[1]Subsequently, Barney Norton was convicted of assault with intent to kill, and his conviction affirmed by this Court on September 20, 1976. See *Norton v. State*, 260 Ark. 412.

carried and fell to the ground when a pistol shot was fired over his head by the security guard. His companion ducked behind a bank, fled, and was picked up by Norton, who was driving the car from which Lisenby and this companion had alighted and which, obviously, was to be used by the three to haul away the loot. The first shots fired from the direction of the automobile rang out about the time Lisenby arose on Hall's command to do so. The bullet struck a bank right beside Hall, who raised up and fired back. Hall commanded, "Everybody get down," after the driver had gotten out of the automobile and fired another shot. After Hall returned the fire he saw someone, apparently the unnamed companion, running toward the car. After a third shot was fired from the direction of the automobile, the driver and this other person got into the car and left.

James testified that he had hold of Lisenby when the firing started, "like my arm around his throat or something like that" and that he was behind Lisenby, so that Lisenby was facing in the direction of the gunfire. He said he, Lisenby and Hall all were seeking to get up a bank and over a fence seeking cover, but that he held on to Lisenby all the while. James said that he pushed Lisenby to the ground during the firing. Some of the shots struck near James and Lisenby. Lisenby was not armed when arrested. He offered no "actual resistance" to Hall and James. He was in the custody of Hall and James throughout the shooting. Hall said he cooperated.

These facts are stated in the light most favorable to the state, as we are required to view them, but they are not disputed or in substantial conflict. It is obvious that Norton, Lisenby and their companion were apprehended while their crime of burglary and larceny was in progress. Asportation of the stolen property was an integral part of the crimes. The majority's statement that there is no evidence that Lisenby participated in the burglary is unwarranted. His possession of the stolen property is itself sufficient evidence to have sustained Lisenby's conviction of that offense, in the absence of an explanation satisfactory to the jury. *Gatewood v. State,* 259 Ark. 325, 532 S.W. 2d 749; *Williams v. State,* 258 Ark. 207, 523 S.W. 2d 377; *Kelly v. State,* 191 Ark. 674, 87 S.W. 2d 400; *Duty v. State,* 212 Ark. 890, 208 S.W. 2d 162.

There was never a time when Lisenby voluntarily disassociated himself from the criminal activities of his co-conspirators and accomplices or communicated any withdrawal from the criminal enterprise (if indeed he did withdraw) to his confederates, or either of them. A reasonable inference that the jury might draw from the testimony is that Norton and the third man, who could have made good their escape without returning to a place on the road from which they could shoot at Hall and James, were endeavoring to recapture the loot and free Lisenby, who was unarmed. The original criminal venture was not terminated before Norton and the third person fled, or at least the jury had the right to so find, and Lisenby was fully responsible for all their acts.

Our law as to the responsibility of one conspirator for the acts of his co-conspirator is well settled. In *Caton v. State,* 252 Ark. 420, 479 S.W. 2d 537, we said:

A conspiracy is a combination between two or more persons to do something unlawful, and it may be established by circumstantial evidence as well as by direct evidence. *** When the combination of persons to do an unlawful act is shown, each of them is liable for the act of one proceeding according to the common plan, if it terminates in a criminal result. ***

In *Johnson v. State,* 252 Ark. 1113, 482 S.W. 2d 600, we said:

*** Each conspirator or participant is responsible for everything done which followed directly and immediately in the execution of the common purpose as one of its probable and natural consequences. *Bosnick v. State,* 248 Ark. 846, 454 S.W. 2d 311. The burglary and larceny, if committed, or the scheme to commit these crimes, if it existed, did not terminate until the perpetrators had left the scene. *Clark v. State,* 169 Ark. 717, 276 S.W. 849. The acts of the participants in an effort to escape are a part of the continuous scheme or conspiracy and the act of one is the act of all. *Wilson v. State* [188 Ark. 846, 68 S.W. 2d 100]; *Clark v. State,* supra; *Maxwell v. State,* 188 Ark. 111, 64 S.W. 2d 79. In the cases cited in *Wilson* from other

jurisdictions, it is clearly recognized that the law holds a participant in a crime responsible for the acts of another acting in concert with him or in the furtherance of a common object, design or purpose. ***

It is also clear that under our law the acts of one co-conspirator in furtherance of the common design may be shown in evidence against his associates. *Local Union No. 858 v. Jiannas,* 211 Ark. 352, 200 S.W. 2d 763; *Gurein v. State,* 209 Ark. 1082, 193 S.W. 2d 997; *Butt v. State,* 81 Ark. 173, 98 S.W. 723. "[I]t is well settled that each conspirator is responsible in any place where any overt act by any of his co-conspirators is done." *Wilkin v. State,* 121 Ark. 219, 180 S.W. 512.

We have spoken clearly on the matter of accomplice liability[1] for a criminal act where a specific intent is an element of that offense. In *Carr v. State,* 43 Ark. 99, we said:

The law upon this subject is, that "a man may be guilty of a wrong which he did not specifically intend, if it came naturally or even accidentally from some other specific, or a general, evil purpose. When, therefore, persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminate in a criminal result, though not the particular result meant, all are liable." Bishop Cr. Law, Sec. 636, and authorities there cited.

In *Spear v. State,* 184 Ark. 1047, 44 S.W. 2d 663, a case involving a charge of murder, with malice aforethought and after premeditation and deliberation, in common law form, and not as a felony-murder, the court instructed the jury as follows:

*** The court instructs the jury that if you find from the evidence beyond a reasonable doubt that the defendant, Percy Spear, in Crawford County, Arkansas, and within three years from the finding of this indictment, entered into a conspiracy with any other person or persons to

---

[1]The sort of liability the state asserts against Lisenby, i.e., responsibility as an accomplice for the acts of another participant in a criminal design, has been referred to by some writers as "accomplice liability."

rob the Reynolds Drug Store in the city of Van Buren, Arkansas, and that the defendant with such other person or persons with common intent to rob same did rob said Reynolds Drug Store with a common purpose and you further find from the testimony beyond a reasonable doubt that by reason of such common conduct on their part and while carrying out such common purpose and intent, an altercation arose on account of the carrying out of such common conduct in which Elmore Brown was shot and killed by either one of the persons so engaged, the defendant, Percy Spear, being present aiding and abetting in the acts and conduct aforesaid of his companion or companions, then each would be guilty of an unlawful homicide in some degree, and if the fatal injury was inflicted upon Elmore Brown with malice aforethought but without premeditation or deliberation, then the defendant would be guilty of murder in the second degree, and if the fatal injury was inflicted on Elmore Brown with malice aforethought and after premeditation and deliberation by either one of the three, then the defendant Percy Spear would be guilty of murder in the first degree, and if the fatal injury was inflicted without malice and without deliberation, but upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible, then the defendant would be guilty of manslaughter.

The instruction was challenged on the ground that felony-murder had not been charged. It was held to be correct for the following reason:

*** The general rule is that all who join in a common design to commit an unlawful act, the natural and probable consequence of which involves the contingency of taking life, are responsible for a homicide committed by one of them while acting in pursuance or furtherance of the common design, although the homicide might not have been in contemplation of the parties when they conspired to commit the unlawful act, and although the actual perpetrator is not identified.

The court relied upon *Carr* v. *State,* supra, and elaborated upon the authority supporting the *Carr* rule. It was an Ohio

case, *Stephens v. State,* 42 Ohio St. 150, in which it was held that each of several associated to commit the crime of robbery was presumed to have intended to authorize the other to kill if it became a necessary means to the consummation of the crime. We said that the instruction, held correct under the indictment, made the crime charged murder in the first degree as to the three participants in the robbery, if the homicide was committed with malice aforethought, deliberation and premeditation by either one of the three. In that case the circumstantial evidence clearly indicated that the accused was inside the store where the robbery was committed at the time of the shooting and that the shot which killed the victim was fired outside the store by a participant who never entered the store, that the accused did not actually participate in the shooting and that the victim of the shooting was not the victim of the robbery. Under the rationale of that case, Spear would have been as much responsible for the assault upon the victim of the shooting if death had not ensued as he was for the killing. See also, *Turnage v. State,* 182 Ark. 74, 30 S.W. 2d 865.

The holding in *Boone v. State,* 176 Ark. 1003, 5 S.W. 2d 322 is to the same effect. Citing *Carr* as authority, we said:

> The general rule is that, where persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminated in a criminal result, though not the particular result meant, all are liable.***

It should be noted that a specific intent to kill was a necessary element of first degree murder with malice aforethought and after premeditation and deliberation, but not of felony-murder. *Tippett v. State,* 224 Ark. 981, 278 S.W. 2d 110; *Clark v. State,* 169 Ark. 717, 276 S.W. 849 (on rehearing). It is significant, however, that we have embraced the concept that an accomplice may be found guilty of first degree murder where specific intent is a required element, even though he did not intend to take life. This is a clear acceptance of the principle that the intent of the actor who commits an assault while engaged in the execution of a crime according to a common design may be imputed to his accomplices who entered into that design.

More importantly we have actually applied the principle of accomplice liability to a charge of assault with intent to kill. In *Lacy v. State*, 177 Ark. 1056, 9 S.W. 2d 314, the court refused to instruct the jury that the accused would not be guilty of assault with intent to kill unless he and his accomplice went to the place the victim was for the purpose of injuring or doing bodily harm to him. We affirmed, saying:

> *** If appellant and Sexton entered into a conspiracy to go to the Barnes home on an unlawful mission, which is conceded, and the act of one of them, proceeding according to the common plan, terminated in a criminal result, both would be liable, although not the particular result intended. *Boone v. State*, 176 Ark. 1003, 5 S.W. 2d 322. Therefore the above instruction did not correctly state the law in requiring the jury to find that they went to the Barnes home for the purpose of doing Davidson bodily harm or injuring him.

There was certainly sufficient evidence that the crime in which all three of the persons involved participated had not been terminated at the time the shooting took place. There is a unity of criminal action between the execution or attempted execution of a crime and the flight from the scene. *Commonwealth v. Kelly*, 337 Pa. 171, 10 A. 2d 431 (1940). Both the securing of the plunder and escape, where there are unities of time, manner and place, may be so immediately connected with a crime as to be a part of its commission. *People v. Walsh*, 262 N.Y. 140, 186 N.E. 422 (1933); *People v. Jackson*, 20 N.Y. 2d 440, 231 N.E. 2d 722 (1967), cert. den. 391 U.S. 928, 88 S. Ct. 1815, 20 L. Ed. 2d 668. The crime was still in progress so long as the essential ingredient of asportation continued. *Carter v. U.S.*, 96 U.S. App. D.C. 40, 223 F. 2d 332 (1955), cert. den. 350 U.S. 949, 76 S. Ct. 324, 100 L. Ed. 827. Any effort to escape with the loot was a furtherance of the common purpose of the participants here. *People v. Anthony*, 90 Cal. App. 2d 122, 202 P. 2d 776 (1949); *People v. Goree*, 30 Mich. App. 490, 186 N.W. 2d 872 (1971). The underlying crime is not complete when some of the joint conspirators are in possession, but not in absolute control, of the stolen property. *Commonwealth Heinlein*, 256 Mass. 387, 152 N.E. 380 (1926). The crime continues until the thief has unmolested dominion over the stolen property and not before. *State v. McCarthy*, 160

Or. 196, 83 P. 2d 801.

On the question of termination of a crime, the Pennsylvania Supreme Court, in *Commonwealth v. Kelly,* supra, has aptly said:

> It is a legitimate assumption that one who plans a robbery or burglary and by an overt act attempts to carry it out has also planned to escape from the scene of his crime. He must intend to make his felonious venture successful and it cannot be successful until he has made his escape. Even though, as here, the felon was frightened away before obtaining any plunder, his escape remains as part of his felonious design. His commission or attempted commission of the felony and his flight are but integrated parts of a single campaign in his war against society. The same malice that motivated his commission or attempted commission of the felony attended him in his flight. \*\*\*

Even if it could be said that the crimes of burglary and larceny were both complete in the sense that all three of the persons who participated could have been prosecuted and convicted of both crimes at the time Lisenby was arrested, the criminal enterprise was not terminated so that each conspirator was no longer responsible for the acts of his confederates. *Commonwealth v. Dellelo,* 349 Mass. 525, 209 N.E. 2d 303 (1965); *State v. Turco,* 99 N.J. Law 96, 122 A. 844 (1923). It has been held that a shooting done two minutes after a robbery, which was apparently done for the purpose of preventing detection, was part of a continuous assault lasting from the robbery to the shooting. *State v. Williams,* 28 Nev. 395, 82 Pac. 353 (1905). There must be an appreciable interval between the termination of the crime and the shooting and it must show a detachment from criminal enterprise. *Commonwealth v. Dellelo,* supra. See also, *Commonwealth v. Kelly,* supra. Whether the crime or attempted crime has been completely terminated is usually a question of fact for the jury to be viewed objectively, and its end is marked by what is done, rather than what is thought. *Commonwealth v. Dellelo,* supra; *People v. Walsh,* supra; *Payne v. State,* 81 Nev. 503, 406 P. 2d 922 (1965), cert. den. 391 U.S. 927, 88 S. Ct. 1826, 20 L. Ed. 2d 666; *Carter v. U.S.,* supra; *People v. Jackson,* supra. The

authorities from other jurisdictions on the question of termination of the crime are completely harmonious with our own decisions cited and quoted earlier.

In treating the problem of determining when the underlying felony has been terminated, in applying the felony-murder doctrine, the courts have generally spoken in terms of the res gestae of the crime. *Payne* v. *State,* supra; *State* v. *Turco,* supra. The res gestae of the crime begins when an indictable attempt is reached and ends where the chain of events between the attempted crime or completed felony is broken with that question usually being a fact determination for the jury. *Payne* v. *State,* supra. There is no distinction to be made between a case where the charge is assault with intent to kill and a felony-murder case insofar as questions pertaining to termination of the crime and the withdrawal of a participant are concerned. The only room for distinction, other than death of the victim, is the requirement of specific intent on the part of someone when the charge is assault with intent to kill.

There was ample evidence that the shooting by appellant's accomplices was an integral part, the res gestae and a continuation of the crime of burglary and larceny.

A principal in the crime is responsible for all the natural or probable consequences that flow from the common purpose. *Johnson* v. *State,* 9 Md. App. 37, 262 A. 2d 325. See also, *Turnage* v. *State,* 182 Ark. 74, 30 S.W. 2d 865; *Johnson* v. *State,* 252 Ark. 1113, 482 S.W. 2d 60; *Bosnick* v. *State,* 248 Ark. 846, 454 S.W. 2d 311. Our own cases clearly indicate that an accomplice is criminally responsible for acts of his confederate in the execution of the crime which follow directly and immediately in the execution of the common design as one of its natural and probable consequences.

Co-conspirators in a dangerous criminal enterprise, such as larceny, should expect that in the event they are detected in the theft, violence endangering life or limb may ensue and, in contemplation of law, whatever is done by one, is done by all and all are equally responsible. *Hamilton* v. *People,* 113 Ill. 34 (1885). One who enters into such a design must be presumed to have understood the consequences which might reasonably be expected to flow from carrying it into effect and

to have assented to the doing of whatever would reasonably or probably be necessary to the accomplishment of the objects of the conspiracy. *McMahon* v. *People,* 189 Ill. 222, 59 N.E. 584 (1901). It is not essential to the criminal liability of one who confederates or combines with others for the acts of all those who participate with him in the execution of the unlawful design that the acts be a part of the original plan, if the act on which liability is asserted is one of the probable consequences of the illegal purpose in which they did join. *Commonwealth* v. *Dellelo,* 349 Mass. 525, 209 N.E. 2d 303 (1965). Certainly the jury was justified in believing that what did happen was a natural and probable consequence of the burglary and larceny.

The question whether one of the participants in a crime has withdrawn from the criminal enterprise so that he is no longer responsible for the acts of other participants is usually a question of fact. See *Commonwealth* v. *Dellelo,* supra. There can be no effective withdrawal by one of multiple participants in a crime unless it is shown, not only that he determined that he would go no further with the criminal enterprise, but that he also communicated that decision to his confederates in sufficient time that they, too, might abandon the undertaking. *Commonwealth* v. *Dellelo,* supra; *Commonwealth* v. *Green,* 302 Mass. 547, 20 N.E. 2d 417 (1930). We have held that a conspirator cannot withdraw from the crime planned by a mere mental process of which one perpetrating the crime is unaware, but that he must communicate his withdrawal to the perpetrator. *Karnes* v. *State,* 159 Ark. 240, 252 S.W. 1. There is no evidence that Lisenby either withdrew from the criminal enterprise or that he communicated or attempted to communicate, any withdrawal or attempt to withdraw from the crime.

The mere fact that a participant in a crime has been arrested does not relieve him of responsibility for the acts of others associated with him in the criminal enterprise. See *People* v. *Walsh,* 262 N.Y. 140, 186 N.E. 422 (1933). Such an act is far from being voluntary. In a case involving a robbery and a kidnapping for the purpose of robbery, the conviction of one of the participants of assault with intent to commit murder was sustained, even though he fired no shots at the police officer assaulted, and was lying on the ground during the firing

and remained there until he was handcuffed. *People* v. *Beaumaster,* 17 Cal. App. 3rd 996, 95 Cal. Rptr. 360 (1971). The court said:

> \*\*\* Beaumaster claims that he withdrew from any conspiracy by submitting to a search and by his general cooperation with the police when stopped. A defendant's failure to continue previously active participation in a conspiracy is not enough to constitute withdrawal; there must be an affirmative and bona fide rejection or repudiation of the conspiracy communicated to the co-conspirator. \*\*\* A failure to complete a crime because of threatened arrest or the appearance of the police is not such a free and voluntary act as to constitute an abandonment. \*\*\* Each member of the conspiracy is liable as such for the acts of any of the others in carrying out the common purpose, i.e., all acts within the reasonable and probable consequences of the common unlawful design. Liability extends to acts unintended or even actually forbidden by a co-conspirator. \*\*\* Defendant did not communicate any withdrawal to his partner in crime. He was apprehended by the police, and his "abandonment" (if it can be so classed) was not voluntary. He, in fact, handed the gun to Chapman, and the probable consequences of this act are chargeable to Beaumaster. We cannot find that there was insufficient evidence to sustain Beaumaster's conviction of assault with intent to commit murder (omitting citations only).

The fact that an accomplice actually fired the shot does not make the evidence insufficient to support an assault with intent to kill conviction of an accused who participated in the underlying crime. *Johnson* v. *State,* 9 Md. App. 37, 262 A. 2d 325 (1970); *People* v. *Anthony,* supra; *McMahon* v. *People,* supra. See also, *Hamilton* v. *People,* supra.

Upon the rationale of rules governing accomplice liability, a participant may be found guilty of an assault with intent to kill when his armed accomplice seeks to take the life of a victim of the crime or an officer when the crime is discovered or in an attempt to escape, even though the assault was not a part of the original plan and there is no evidence that the participant charged had the intent to kill the officer or victim.

*McMahon* v. *People,* supra.

It seems to me that the majority has erroneously concluded that the original crimes of burglary and grand larceny had come to an end. Otherwise, they could not distinguish *Bosnick* v. *State,* 248 Ark. 846, 454 S.W. 2d 311. This might be done by a jury, but it cannot be sustained as a matter of law. I daresay not one of my brethren of the majority would hesitate to say the evidence was sufficient if Lisenby had been arrested with the loot in the "pro" shop, his companion had taken flight and the shooting had commenced immediately. Yet, there really is no difference in that situation and this.

Cases cited in the majority opinion afford no basis for distinction. Neither accomplice liability nor res gestae arose in *Jones* v. *State,* 89 Ark. 213, 116 S.W. 230. In *Warren* v. *Commonwealth,* 333 S.W. 2d 766 (Ky., 1960), the accused actively took steps to protect the victim. In *Slim & Shorty* v. *State,* 123 Ark. 583, 186 S.W. 308, the assault was committed in resisting an arrest for crimes committed at a different time and place and the evidence showed that the arresting officers had not sufficiently identified themselves before presenting their weapons, making an issue as to self-defense. *State* v. *Walters,* 105 Or. 662, 209 P. 349 (1922) falls into the same category. A homicide or assault in resisting arrest for crimes committed at other times and places is hardly the natural and probable consequence of those crimes.

I cannot agree with the Chief Justice that the judgment should be reversed because of the court's instruction No. 5.

Appellant admits that the first paragraph of the instruction given is correct. He then argues that the words "their victim" in the first sentence of the second paragraph constituted a prohibited comment on the evidence. If this was so, it could easily have been corrected if the court's attention had been called to the matter. The question cannot be considered for the first time on appeal. Appellant also argues here that the words, "then each of the defendants, being present, aiding and abetting the acts and conduct aforesaid, would be guilty of an unlawful assault" constituted a comment on the evidence. I simply do not see how this can be so considered. Appellant theorizes that because Norton was a principal, not

an accessory, and the court told the jury by this language that Lisenby was an accessory, it was a comment on the evidence. This the instruction does not do and it is difficult for me to see how it can possibly be so read. Nowhere did the court tell the jury that Lisenby was present, aiding and abetting the acts and conduct of Norton. Here again, this objection is made for the first time on appeal. No party was in anywise prevented from offering any objection he wanted to make to any instruction. The trial judge specifically afforded an opportunity to the parties to make objections to the instructions.

The only other argument made here goes to an objection that was made, i.e., that Lisenby personally must have had the specific intent to kill at the time the assault was made. In my view, this is a fallacious argument as set out in the first part of this opinion and the instruction was not erroneous in that respect. The only remaining objection made in the trial court, aside from a general objection which we do not consider, was to the omission of a requirement that the jury find a specific intent to kill and to the denial of a verbal request that the jury be instructed,

> . . . . . that when two persons are proceeding according to a common plan, that if they detour or terminate, if they detour from their original plan and a specific intent crime is committed by one of the other parties, the second party must have some knowledge of that intent or knowledge that the other defendant is capable, has the capacity to develop that intent.

The ground upon which the Chief Justice bases his finding of error was not argued by the appellant on appeal. Objections not argued on appeal are waived. *Roach v. State,* 255 Ark. 773, 503 S.W. 2d 467. See *In re Briefing of Criminal Cases,* 234 Ark. 846, 354 S.W. 2d 740.

I should note that the court's instructions did include the following:

> *** Before the defendants can be convicted of assault with intent to kill, you must find that the defendants committed a willful assault with malice aforethought upon another with the specific intent to murder or kill

that person. Malice and intent to kill may be inferred from acts and circumstances of the assault such as the use of a deadly weapon in a manner indicating an intention to kill or an act of violence which ordinarily would be calculated to produce death. You may properly consider the character of the weapon employed, the way it was used, the manner of the assault, the violence attendant thereon, and all other facts and circumstances tending to reveal the state of mind of the defendants.

In considering these instructions and in deliberating and voting on your findings, you will bear in mind that these defendants are charged here as individuals and you must determine the guilt or innocence of each separately. Accordingly, you must make separate findings as to each defendant.

In this connection, you are also charged that it is not necessary that you reach the same verdict for each defendant. You may find one or more innocent while at the same time finding the other guilty, your verdict being controlled only by the evidence and these instructions.

Thus, even assuming that appellant's request is a correct statement of law, the jury, in the light of the instructions given was not totally deprived of guidance on the fact issues presented. In any event, this was not such an error as would justify our treating the case, on appellate review, as we do those cases wherein the death penalty or life imprisonment is the punishment imposed. In order to reverse this case for the failure of the circuit judge to instruct the jury as appellant requested, we would have to do so.

I would add that the fact that appellant's requested instruction was not made in writing is of no significance whatever. The request was made and denied. There was still a waiver here.

I recognize that other points for reversal have been asserted but time and space limitations make it inadvisable that I treat them. Suffice it to say that I find no reversible error and would affirm the judgment.